The case was postponed for consideration, and at the present term
Johnson, J.
delivered the opinion of the Court.
This is a continuation, or rather a branch, of the case of the same plaintiff against Cassey Miller, et al. decided in this Court not long since ; and by reference to the opinion of the Court pronounced upon it, the whple history of the transaction will be *227 developed. It there appears that the consideration on which the bond was founded, was a tract of .land conveyed by the plain-, tiff to her son, the defendant’s intestate; and a bill in Equity was filed to set aside the whole contract, on the ground of the death of the son, and the consequent impracticability of his performing the condition of the bond. The relief prayed was refused ; and my brother Colcock, in reference to this bond, remarks, that “ The mother is not without remedy: she can sue on the bond and obtain her judgment for such damages as she may be intitled to, for the non-performance of the contract of her son.” That opinion had been formed on great deliberation, and it was then thought would have been decisive of the case. It is true, that the plaintiff’s right to recover on the bond, was not then directly the matter in issue ; and as it has been questioned by the judgment of the Circuit Court, we are now called on to review our own opinion.
Apart from the facts, which are, perhaps unnecessarily, drawn into the present question, the bond itself imports, and the defendant’s plea admits, that it was founded on an adequate consideration, and the question recurs whether the bond was discharged by the death of the obligor.
The general rule is, that the obligor of a bond is bound to perform whatever he undertakes, nor will his death discharge the obligation. Let us illustrate it by a common money bond. The condition may be, that he himself shall pay, as is universally the case in regard to promissory notes, and yet no one ever yet thought that his executors or administrators were not liable at the suit of the obligee. A carpenter undertakes, for a consideration paid in advance, to build me a house ; and he lays the corner stone, and dies. An overseer undertakes the care and management of my plantation for one or two years, for a consideration which I have before advanced; he serves me one month, and dies. Ami without remedy, and must Hose the money paid in advance 1 I think not. The law is not so unreasonable.
It is suggested that the obligation imposed by the condition of this bond, imposes an obligation which admits of no substitute. But in theory, the undertaking is to pay money, and the condition is a defeasance provided as a substitute, which, unless it is performed, leaves the undertaking in full force and effect. If we *228 regard the obligation and the condition as an entire and indivisi- ^ cofltraotj qle game consequences follow. He who undertakes to a *s supposed to do it in reference to all the events which ordinarily oppose it, and estimates the consideration accordingly. Thus, he who undertakes to perform a personal service, covenants that he possesses the skill, and strength, and means, and will live to perform it; and so far as his life is concerned, the consideration is a premium on the insurance of his own life : and I am a loss to discover wherein this is illegal.
The old common law notion was, that if the condition of a bond was impossible at the time of its execution, the bond was single, and it was regarded as the unconditional undertaking of the obligor to pay the penalty ; but that if the condition was possible at the time, and became afterwards impossible, as by the death of a party, where the thing to be done was personal, the penalty was saved, and the performance of the condition was excused ; and the obligee was without remedy at law. Co. Lit. 206, a. b.
This was a result at which the good sense of mankind revolted, and the Court of Chancery began very early to interpret these obligations according to their substance, and to decree their specific execution in those cases where it was practicable; or to award damages through the medium of an issue at law, to the extent that the obligee had been damnified. Vide, 1 Eq. Ca. Abr. 17, 18, Title, Agreements, &c. 2 Evans’ Pothier, Title, Penal Obligations, 71, where all the cases are collected.
There can be no question about the right of the plaintiff in this case to relief, and the only difficulty which the Court have felt in regard to it, has been whether a Court of Law has jurisdiction of the matter.
Under the rule before laid down, the Courts of common law were incompetent to examine into ¡he condition of the bond. If the obligor had failed to perform it to the letter, the whole penalty was forfeited, and the defendant could only be relieved from it in Equity; but our act of the Legislature of 1792, which in its legal effect is much the same as the statute of 8 and 9 W. 3. c. 11, sec. 8, seems to have been designed expressly to give the law Courts cognizance of this subject, with a view, as it is expressed in the preamble, “ to prevent unnecessary suits in Equity where bonds are given, conditioned for performance of *229 covenants, or for the delivery of property, or for things other than the payment of money.” It accordingly provides, that the plaintiff may in all such cases, and the defendant may by rule of Court compel him thereto, submit the condition of the bond and special circumstances, to a jury. 1 Faust, 213.
Now in a case like this, where the specific performance of the condition is impracticable, it is clear that a Court of Equity cannot give relief but through the agency of a Court of Law, for that Court disclaims the right to assess damages, and it would seem to follow, under the rule prescribed by the act, that it was peculiarly a matter of common law jurisdiction: at any rate, no doubt can be entertained that it may take cognizance of it.
In arriving at this conclusion, one difficulty only has presented itself, and that is in relation to those cases in which a specific execution is attainable though the obligor be dead; as where a bond is conditioned to make titles to land, which may be substantially performed by the heir; and it would appear unreasonable that the obligor should maintain his action against the executor or administrator, when the heir alone was capable of performing the condition. But a remedy for this evil is to be found in the capacity of the Court of Equity, to compel the specific execution at the instance of the obligee, or of the 'executor, or administrator. The motion in this case must therefore prevail.
Judgment reversed.